IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Rackim Williams, | Case No. 8:11-cv-00281-JFA-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Officer LT Anthony Davis, | |
| Defendant. | |

This matter is before the Court on Defendant's motion for summary judgment. [Doc. 37.] Plaintiff, a prisoner proceeding pro se, brought this civil rights action under 42 U.S.C. § 1983. [Doc. 1.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on February 3, 2011, generally alleging an excessive force/cruel and unusual punishment claim. [Doc. 1.] On July 28, 2011, Defendant filed a motion for summary judgment. [Doc. 37.] On July 29, 2011, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment procedure and the possible consequences if he failed to adequately respond to Defendant's motion for summary judgment. [Doc. 38.] On August 24, 2011, Plaintiff filed a response in opposition to Defendant's motion for summary judgment. [Doc. 46.] Defendant filed a reply on September 13, 2011. [Doc. 52.] Defendant's motion is now ripe for review.

**BACKGROUND**

At all times relevant to this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Lee Correctional Institution ("LCI") [Doc. 1 at 2] in the Special Management Unit ("SMU") [Doc. 37-2 ¶ 2].[1] Plaintiff alleges Lieutenant Anthony Davis ("Defendant") was helping with showering on November 18, 2008 by opening up inmates' cell doors and sending inmates to the shower. [Doc. 1 at 3.] Plaintiff further alleges Defendant opened Plaintiff's cell door and told Plaintiff to go to the shower without handcuffing Plaintiff.[2] [*Id.*] Then, about fifteen to twenty minutes later, Defendant came to get Plaintiff, and Plaintiff and Defendant exchanged threatening words. [*Id.*] After exchanging threatening words, Plaintiff, who was not handcuffed at the time, alleges he swung at Defendant because Plaintiff feared for his safety. [*Id.*] Defendant then grabbed Plaintiff and brought him to the ground. [*Id.*] Plaintiff alleges Defendant punched Plaintiff in the face while he was on the ground [*id.*], though Defendant denies punching Plaintiff [Doc. 37-2 ¶ 13]. Plaintiff contends other officers came toward Plaintiff and Defendant, and they flipped Plaintiff over and handcuffed him. [Doc. 1 at 3.] Two officers took Plaintiff to see Captain Crib and called the nurse, who observed the left side of Plaintiff's eye was swollen with a cut underneath. [*Id.*] Plaintiff further alleges pictures were taken of his eye. [*Id.*] Plaintiff contends Defendant used excessive force, violating

---

[1] By the time Plaintiff filed this action, he was housed in the SMU at Broad River Correctional Institution ("BRCI"). [*See* Doc. 1 at 2 (listing Plaintiff's address as BRCI); Doc. 1-2 at 1 (envelope listing BRCI SMU as Plaintiff's return address).]

[2] Defendant avers Plaintiff was handcuffed while he was being escorted from his cell to the shower, though Defendant removed the handcuffs to allow Plaintiff to take a shower. [Doc. 37-2 ¶ 4.] Defendant further avers he placed the handcuffs back on Plaintiff at the completion of shower time but then was called away from the shower cell and, while Defendant was away, Plaintiff was able to get out of the handcuffs without Defendant knowing Plaintiff was not handcuffed. [*Id.* ¶¶ 6–9.]

Plaintiff's right to be free from cruel and unusual punishment.[3]  [*Id.* at 2.]  Plaintiff seeks appointment of a lawyer to help with the case; a trial; to be transferred to a different institution; to have charges brought against Defendant; money damages; and to be released "back to population."  [*Id.* at 5.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

---

[3] In Plaintiff's response in opposition to the motion for summary judgment, Plaintiff contends he is also alleging a due process claim related to Plaintiff's grievance.  [Doc. 46 at 2.]  However, a review of the Complaint reveals the only claim asserted in this action is an excessive force/cruel and unusual punishment claim.  [Doc. 1 at 2.]  The only mention of a grievance in the Complaint is in response to a question about whether Plaintiff filed a grievance [*id.*], which allows the Court to determine whether Plaintiff has exhausted his administrative remedies.

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic*

*Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

6

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

# DISCUSSION

**Claims for Injunctive and/or Declaratory Relief are Moot**

As an initial matter, because Plaintiff is no longer incarcerated at LCI [*see* Doc. 1 at 2 (listing Plaintiff's address as BRCI); Doc. 1-2 at 1 (envelope listing BRCI as Plaintiff's return address)], his claims are moot to the extent he is seeking injunctive and/or declaratory relief. *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (holding that former detainee's request for injunctive relief was moot). Plaintiff's claims for monetary damages, however, survive his transfer from LCI, *id.*, and, as a public official, Defendant is subject to suit for damages in his individual capacity[4] in a § 1983 lawsuit, *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Goodmon v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991). Nevertheless, for the reasons set forth below as to Plaintiff's damages claims, the Court concludes Defendant is entitled to qualified immunity and recommends Defendant's motion for summary judgment be granted.

---

[4] To the extent Plaintiff brings this suit against Defendant in his official capacity, Defendant is entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendant in his official capacity, those claims must be dismissed because Defendant in his official capacity is entitled to immunity pursuant to the Eleventh Amendment.

7

**Qualified Immunity**

Defendant argues he is entitled to qualified immunity because his conduct did not violate any clearly established rights of which a reasonable government official would have known. [Doc. 37-1 at 11–14.] For the reasons explained below, the Court agrees Defendant is entitled to qualified immunity.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of

the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

Here, Plaintiff contends Defendant violated Plaintiff's constitutional right to be free from cruel and unusual punishment due to Defendant's alleged use of excessive force. Accordingly, to determine whether Defendant is entitled to qualified immunity, the Court must determine whether Defendant acted with objective legal reasonableness when he wrapped his arms around Plaintiff and brought Plaintiff to the ground then got on top of Plaintiff and secured Plaintiff's wrists.

The use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v.*

*McMillian,* 503 U.S. 1, 5 (1992).  To state an excessive force claim, an inmate must show (1) the correctional officers acted with a sufficiently culpable state of mind and (2) the harm inflicted on the inmate was sufficiently serious.  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  The subjective component requires the inmate to demonstrate the officer applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm."  *Hudson*, 503 U.S. at 6–7.  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  *Wilson v. Seiter,* 501 U.S. 294, 299 (1991).  When evaluating whether the use of force was wanton or unnecessary, the Court considers (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response.  *Hudson,* 503 U.S. at 7 (citations omitted).  To satisfy the objective element of a conditions claim, "[a]ll that is necessary is proof of more than *de minimis* pain or injury."  *Williams*, 77 F.3d at 761 (citing *Hudson*, 503 U.S. at 8–9).

      Applying the factors from *Hudson* to this case, the Court concludes Defendant is entitled to qualified immunity because a reasonable correctional officer in Defendant's position could have believed the same level of force was needed to preserve order and discipline.  Although Plaintiff contends he feared for his safety, Plaintiff concedes he swung at Defendant following an alleged exchange of threatening words between Plaintiff and Defendant.  [Doc. 1 at 3.]  Plaintiff's swinging at Defendant establishes the need for an application of force.  Viewing the evidence in a light most favorable to Plaintiff, as he was being restrained, Defendant punched Plaintiff in the face.  However, other than his own

conclusory allegation, Plaintiff has no evidence to corroborate his claim Defendant punched Plaintiff in the face. Defendant attested no one punched Plaintiff [Doc. 37-2 ¶ 13], and Corporal McBride, who assisted Defendant in placing handcuffs back on Plaintiff, attested he did not see anyone punch Plaintiff [Doc. 37-3 ¶ 6–7]. Corporal McBride, however, testified Plaintiff was flailing his arms and attempting to strike Defendant. [*Id.* ¶ 6.] The medical summary from the date of the altercation states Plaintiff's left eye was slightly swollen with a small scratch but there was no bleeding and no acute distress noted. [Doc. 37-4 at 31.] The force used to restrain Plaintiff was minimal compared to the threat he posed, *see Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178 (2010) (stating the extent of injury may provide some indication of the amount of force applied and that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" (citations omitted)); Plaintiff, by his own admission, had already swung at Defendant [Doc. 1 at 3]. Accordingly, a threat was reasonably perceived by Defendant.

Further, Plaintiff's own admission establishes that, after Plaintiff swung at Defendant, Defendant got Plaintiff to the floor in a position where Defendant could secure Plaintiff's wrists. [*Id.*] Then, once other officers arrived, they flipped Plaintiff over to handcuff him. [*Id.*] Thus, the evidence demonstrates Defendant's use of force in this instance was tempered. Moreover, Plaintiff admits he was immediately escorted to see Captain Crib and a nurse [*id.*], which further establishes an attempt to limit any harm against Plaintiff. Accordingly, applying the factors in *Hudson*, the Court determines a reasonable correctional officer in Defendant's position could have believed the same level of force was necessary to restore order after being swung at by an inmate. Therefore, the Court

concludes Defendant is entitled to qualified immunity and recommends Defendant's motion for summary judgment be granted.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendant's motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin<br>
United States Magistrate Judge

February 21, 2012
Greenville, South Carolina